1
2
3
4
5
6

7        UNITED STATES DISTRICT COURT

8        NORTHERN DISTRICT OF CALIFORNIA

9

10   JOSE ROBERT GUTIERREZ,                          No. C 08-3286 WHA (PR)

11             Petitioner,                           **ORDER DENYING PETITION FOR WRIT
                                                     OF HABEAS CORPUS**
12        v.

13   M. S. EVANS, Warden,

14             Respondent.

15   _____/

16                              **INTRODUCTION**

17         This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254.

18   Respondent was ordered to show cause why the writ should not be granted based on the claims set

19   forth in the petition.  Respondent has filed an answer and a memorandum of points and authorities in

20   support of it.  Petitioner has responded with a "Denial and Exception to the Return to the Order to

21   Show Cause and Memorandum of Points and Authorities in Support Thereof" which is construed as

22   a traverse.  For the reasons set forth below, the petition is **DENIED**.

23                               **STATEMENT**

24         In 2005, a Monterey County Superior Court jury found petitioner guilty of one count of first-

25   degree murder, and two counts of attempted deliberate and premeditated murder (Exh. C5 at 9-10).

26   The jury found true the allegations that each offense was committed for the benefit of a criminal

27   street gang, that petitioner had personally and intentionally discharged a firearm on all counts, and

28   that he personally inflicted great bodily injury as to the first count of attempted deliberate and

**United States District Court**
For the Northern District of California

1   premeditated murder (*id.* at 10).

2        On February 14th, 2006, the trial court sentenced petitioner to a term of 50 years to life for

3   the count of murder, 40 years to life for the first count of attempted deliberate and premeditated

4   murder, and 35 years to life for the second count of attempted deliberate and premeditated murder,

5   for a total term of 125 years to life (*ibid.*).  The California Court of Appeal for the Sixth Appellate

6   District affirmed the judgment (*id.* at 24).  The California Supreme Court denied his petition for

7   review (Exh. E).

8        The following background facts describing the crime are taken from the opinion of the

9   California Court of Appeal:

10   On the evening of January 17, 2004, Gustavo Silva drove his red Chevy pickup truck
with two friends, Victor Loyo and Ramiro Barrios, from the Monterey Peninsula to the
11   Northridge Mall in Salinas and then to the parking lot of the Los Arcos Restaurant. They
met Leticia Brisenio (Silva's friend), who arrived a short time later in another car along
12   with her cousin, young nephew, and two other women.

13   Silva and Brisenio were together talking outside the truck on the passenger's side; they
were standing about even with where the truck bed connected with the cab. Loyo and
14   Barrios were talking on the other side of the truck behind the opening of the driver's
door. (Both doors of the truck were open.) The car with the other girls was parked by the
15   driver's side of the truck.

16   A male approached Loyo and Barrios on the driver's side of the truck. He was wearing
black pants, a hooded sweater or sweatshirt, and a black beanie. Silva became suspicious
17   of him by the way he approached his friends. The male asked Barrios and Loyo where
they were from. According to Silva, Barrios responded that "he was from Monterey . .
18   . he wasn't nothin.' " Silva understood from this that Barrios was saying that he wasn't
in any gang, that he was an "[a]verage working guy." Loyo testified that he was the one
19   who responded, saying, " 'We're not from around here. We're just here listening to
music.' " (Loyo recalled that the male then turned and repeated his question to Silva.)
20

21   The male then pulled a gun from the pocket of his sweater and started shooting. He shot
Barrios. Loyo started running. The male then went back behind the truck to shoot at
22   Silva, who ran toward the front of the truck and to the front door of the restaurant. Silva
was shot in the shoulder, and the bullet passed through his body. As he was running,
23   Silva heard  screams. Brisenio was shot in the back as she was running toward the car
and was immediately paralyzed.  [Footnote omitted].

24   Salinas Police Officer Steven Long was the first officer to respond to the scene of the
shooting, arriving at approximately 9:00 p.m. The area was adequately lit and no
25   additional illumination was needed to conduct the investigation. A deceased male was
lying face down in the parking lot next to a light pole. There was a female seated near
26   him (Brisenio) who was screaming that she had been shot in the back and had no feeling
in her legs. There was a red pickup truck parked in the lot adjacent to the same light pole
27   near where the deceased male was located. Officer Long observed numerous
nine-millimeter shell casings "strewn about the truck and in the area of the victims."
28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2  Dr. John Hain, a forensic pathologist, performed an autopsy two days after the shooting
and concluded that Barrios had sustained at least six gunshot wounds. Four of the
3  gunshot wounds were in the heart or aorta or both, and Dr. Hain opined that any one of
those four wounds would have been fatal. Salinas Police Officer Neil Herrier, who
4  attended the autopsy, testified that the six hollow-point bullets recovered were from a
nine millimeter handgun.

5  (Exh. C5 at 2-3.)  Additionally, the prosecution introduced gang evidence to support the gang

6  enhancement (*id.* at 20).  The  state appellate court summarized the introduction of gang evidence at

7  trial as follows:

8  The prosecution introduced substantial gang evidence in connection with the gang
enhancement.  [] Detective Bohn offered significant expert testimony concerning the
9  characteristics and criminal activities of Norteos [sic],  defendant's membership in the
Norteo [sic] SEM gang, his association over the years with Norteos [sic], and opinion
10  evidence as to whether the Los Arcos shootings were committed for the benefit of the
Norteo [sic] criminal street gang.

11
At the outset of the trial, defendant filed a motion in limine to exclude the gang expert
12  testimony on the grounds that it included inadmissible hearsay and was cumulative.
Defendant also moved to bifurcate the trial so that the gang enhancement would be tried
13  separately. Those matters were argued extensively. The court denied the motion to
bifurcate; [footnote omitted] it further denied defendant's request to limit the scope of
14  the proposed gang expert testimony.

15  The objections were renewed prior to Detective Bohn's testimony, defendant arguing that
certain gang evidence--namely, his tape-recorded jailhouse telephone conversations--was
16  cumulative and subject to exclusion under Evidence Code section 352 because its
probative value was substantially outweighed by the undue prejudice it would create.
17  The court overruled this objection and concluded that any stipulation offered by defense
counsel that defendant was a Norteo [sic] was insufficient to warrant the exclusion of the
18  gang evidence. The court held that defendant's gang membership and the allegation that
he committed the Los Arcos shootings for the benefit of the Norteo [sic] criminal street
19  gang needed to be placed in context through evidence other than his mere gang
membership. But the court agreed to defense counsel's proposal that it preinstruct the
20  jury under CALJIC No. 2.50 at the time of the admission of the gang evidence.

21  At the beginning of Detective Bohn's testimony, the court did in fact caution the jury--
based upon an adaptation of CALJIC No. 2.50--that the gang evidence (i.e., evidence of
22  gang activity and criminal acts by gang members other than the charged crimes) could
not be considered to prove that defendant had a criminal disposition; rather, it was being
23  introduced only to attempt to establish the gang allegation.

24  (*Ibid.*)

25  **ANALYSIS**

26  **A.    STANDARD OF REVIEW**

27  A district court may not grant a petition challenging a state conviction or sentence on the

28

3

United States District Court
For the Northern District of California

1  basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of

2  the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application

3  of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

4  resulted in a decision that was based on an unreasonable determination of the facts in light of the

5  evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both

6  to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362,

7  407 09 (2000), while the second prong applies to decisions based on factual determinations, *Miller*

8  *El v. Cockrell*, 537 U.S. 322, 340 (2003).

9      A state court decision is "contrary to" Supreme Court authority, that is, falls under the first

10  clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the

11  Supreme] Court on a question of law or if the state court decides a case differently than [the

12  Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at

13  412 13. A state court decision is an "unreasonable application of" Supreme Court authority, falls

14  under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the

15  Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

16  case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that

17  court concludes in its independent judgment that the relevant state court decision applied clearly

18  established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be

19  "objectively unreasonable" to support granting the writ. *See id.* at 409.

20      "Factual determinations by state courts are presumed correct absent clear and convincing

21  evidence to the contrary." *Miller El*, 537 U.S. at 340. This presumption is not altered by the fact

22  that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v.*

23  *Mata*, 449 U.S. 539, 546 47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253

24  F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome

25  Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid*.

26      Under 28 U.S.C. ' 2254(d)(2), a state court decision "based on a factual determination will

27  not be overturned on factual grounds unless objectively unreasonable in light of the evidence

28

1    presented in the state court proceeding." *Miller El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223

2    F.3d 1103, 1107 (9th Cir. 2000).

3          When there is no reasoned opinion from the highest state court to consider the petitioner's

4    claims, the court looks to the last reasoned opinion, which in this case is that of the California Court

5    of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 06 (1991).

6    **B.    ISSUES PRESENTED**

7          As grounds for federal habeas relief, petitioner claims that the trial court: (1) violated his

8    rights under the Confrontation Clause of the Sixth Amendment by refusing to unseal evidence

9    petitioner wanted to use to cross-examine a prosecution witness referred to as "John Doe;" (2)

10   violated his due process rights when it refused to hold a hearing on whether to reveal juror identities

11   to petitioner for use in a juror misconduct investigation; and (3) violated his right to due process

12   when it admitted expert testimony on Norteño gang activity (Pet. 8).

13         **1.    Confrontation Clause**

14         Petitioner claims that the trial court violated his Confrontation Clause right by refusing to

15   unseal evidence that petitioner wanted to use to cross-examine "John Doe," a prosecution witness.

16   The evidence petitioner wanted, which the trial court reviewed in camera, were: (1) the identity of a

17   person identified in the record as "Witness Two;" (2) John Doe's juvenile court records; (3) police

18   reports from Doe's vehicle theft conviction, and (4) an affidavit supporting a search warrant for

19   petitioner's residence (Pet. 8).  Petitioner argues that if he obtained this evidence, he could have used

20   it to cross-examine Doe more effectively and the jury would not have found him guilty (*id.* at 8c).

21   The state appellate court denied petitioner's claim because the in-camera materials had little to no

22   probative value, Doe was substantially impeached with other evidence of his lengthy history of

23   criminal activity and dishonesty in dealing with law enforcement, and the police report and warrant

24   affidavit were neither discoverable nor of use to petitioner (Exh. C5 at 13-16).

25         The Confrontation Clause of the Sixth Amendment provides that in criminal cases the

26   accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. It does

27   not prevent a trial judge from imposing reasonable limits on cross-examination based on concerns of

28

*(left margin, vertical text)* **United States District Court** / For the Northern District of California

**United States District Court**
For the Northern District of California

1  harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only

2  marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause

3  guarantees an opportunity for effective cross-examination, not cross-examination that is effective in

4  whatever way, and to whatever extent, the defense might wish. *See Delaware v. Fensterer*, 474 U.S.

5  15, 20 (1985) (per curiam). A defendant meets his burden of showing a Confrontation Clause

6  violation by showing that "[a] reasonable jury might have received a significantly different

7  impression of [a witness'] credibility . . . had counsel been permitted to pursue his proposed line of

8  cross-examination." *Van Arsdall*, 475 U.S. at 680.

9      To determine whether a criminal defendant's Sixth Amendment right of confrontation has

10  been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1)

11  the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's

12  interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient

13  information to assess the credibility of the witness." *United States v. Beardslee*, 197 F.3d 378, 383

14  (9th Cir. 1999).

15      First, petitioner claims that the trial court violated his rights under the Confrontation Clause

16  by refusing to unseal the identity of a possible witness identified by the prosecution prior to trial as

17  "Witness Two" (Pet. 8). Petitioner argued to the trial court that he wanted to find Witness Two

18  because Witness Two could offer testimony undermining the credibility of prosecution witness John

19  Doe (Exh. C5 at 11). The trial court held an in-camera hearing and found that Witness Two had the

20  same information about John Doe as another witness that was disclosed to the defense, Edgar Vargas

21  (*ibid.*). After finding that Witness Two's testimony would be cumulative to Vargas's, and weighing

22  that against the risk to Witness Two of disclosing his identity to the defense, the trial court denied

23  Petitioner's request to unseal Witness Two's identity (*id*. at 12). At trial, Vargas testified for the

24  defense that John Doe had admitted to him that he had shot a person in a schoolyard for gang

25  reasons, and Witness Two was not called as a witness by either side. The state appellate court

26  agreed with the trial court, finding that any anticipated testimony of Witness Two was cumulative of

27  Vargas's testimony and would not have provided any additional evidence that might have

28

**United States District Court**
For the Northern District of California

1  exonerated petitioner (Exh. C5 at 13).

2      It is true that while Witness Two's testimony would have been cumulative to Vargas's, the

3  prosecutor brought out evidence on cross-examination that undermined Vargas's credibility

4  (Reporter's Transcript at 3616-37).  Vargas explained that he was offering this testimony in order to

5  improve his position with the police and District Attorney with respect to a weapons possession

6  charge (*id*. at 3610-11), testified that he did not know Doe very well (*id*. at 3617), and testified to his

7  lengthy criminal history (*id.* at 3630-31).  Nevertheless, even assuming that Witness Two's

8  credibility could not have been similarly undermined, his absence did not substantially deprive

9  petitioner of the opportunity to impeach Doe.  Doe had been impeached by a variety of other

10  evidence in addition to Vargas's testimony, including "his lengthy criminal history, [and] his

11  frequent dishonesty in his dealings with law enforcement" (Exh. C5 at 13).  Given the cumulative

12  nature of Witness Two's testimony, the substantial other evidence upon which the jury could assess

13  Doe's credibility, and the trial court's finding that there was a risk of harm to Witness Two if his

14  identity were disclosed given the gang-related charges, the trial court did not violate petitioner's

15  rights under the Confrontation Clause when it refused to unseal the identity of Witness Two.

16      Next, petitioner argues that the trial court violated his rights under the Confrontation Clause

17  when it refused to unseal John Doe's juvenile court records in order to find materials which might

18  aid in impeaching Doe (Pet. 8).  At the in-camera hearing, the trial court found that nothing in the

19  juvenile record could have been admitted and used for the purpose of impeaching Doe (Exh. C5 at

20  13).  The state appellate court agreed and further explained that Doe had been substantially

21  impeached with his "his lengthy criminal history, his frequent dishonesty in his dealings with law

22  enforcement, and his alleged involvement in a schoolyard shooting" (*id.* at 13-14).  There is nothing

23  in the record to indicate that Doe's juvenile record contained any admissible impeachment evidence.

24  Further, because Doe was impeached with his lengthy criminal history and dishonesty with law

25  enforcement, it was reasonable for the trial court to find that further cross-examination based upon

26  Doe's juvenile record would have added little.  As the exclusion of Doe's juvenile record did not

27  leave the jury with insufficient information to assess the credibility of John Doe, the trial court did

28

7

1  not violate petitioner's rights under the Confrontation Clause.

2      Next, petitioner claims that the trial court violated his rights under the Confrontation Clause

3  when it refused to unseal a police report regarding Doe's prior conviction for car theft (Pet. 8).  The

4  state appellate court affirmed the trial court's ruling because Doe had been properly impeached with

5  the vehicle theft conviction and the report itself contained no additional information for

6  impeachment (Exh. C5 at 14-15).  Because evidence other than the name or type of crime and the

7  date and place of convictions would have been inadmissible under California law (*id.* at 14),

8  petitioner could not have used any such evidence in the report to cross-examine Doe.  Furthermore,

9  because Doe was properly impeached with the vehicle theft conviction itself, *ibid.*, the jury was not

10  deprived of sufficient evidence with which to assess Doe's credibility.  For this reason, the trial

11  court did not violate petitioner's rights under the Confrontation Clause when it refused to unseal the

12  police report of Doe's vehicle theft.

13      Lastly, petitioner claims that the trial court violated his rights under the Confrontation Clause

14  when it refused to unseal the affidavit for a warrant to search petitioner's house (Pet. 8b).  According

15  to petitioner, the affidavit would show that John Doe made an untruthful assertion that weapons

16  would be found within petitioner's residence (*id.* at 8b).  Doe's statement that guns were in the

17  house was not evidence relied upon by the jury when it convicted petitioner.  Thus, even if the

18  affidavit could show that petitioner's statement were not true, it had minimal value because, as the

19  California Court of Appeal explained, it "did not contain material that had any impact upon

20  defendant's guilt or innocence with respect to the charged crimes" (Exh. C5 at 16).  Moreover, as

21  discussed above, the jury had ample other evidence with which to assess Doe's credibility insofar as

22  he was impeached with his lengthy criminal history and dishonesty with law enforcement.

23  Consequently, the trial court did not violate petitioner's rights under the Confrontation Clause when

24  it refused to unseal the search warrant affidavit.

25      For the reasons discussed, the trial court's failure to disclose to petitioner sealed information

26  regarding John Doe did not violate the Confrontation Clause.  Consequently, petitioner is not

27  entitled to federal habeas relief on this claim.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

### 2.   Juror Identities

Petitioner alleges that the trial court violated his due process rights when it refused to hold a hearing on disclosing the identities of jurors (Pet. 8).  Petitioner claims that jurors considered extrajudicial information during trial when they discussed whether a large man in attendance in the courtroom was there to intimidate witnesses (*id.* at 8c-8d).  According to petitioner, he needed juror contact information in order to investigate any possible juror misconduct, and the trial court's refusal to hold a hearing on this issue "deprived him of a state conferred benefit, and thus Federal Due Process" (*id.* at 8d).

Under Sections 206 & 207 of the California Code of Civil Procedure, "any person may make a motion to obtain access to the sealed records, accompanied by a showing of good cause" (Exh. C5 at 17).  The trial court denied the motion because neither the judge nor bailiff had seen the man, and the judge found that there had been nothing more than "idle chit-chat between a couple of jurors about" a large man observing court proceedings (*ibid.*).  The state appellate court denied petitioner's claim finding that he had failed to make a showing of good cause (*id.* at 18-20).

Violations of state law generally do not implicate federal due process concerns.  It is only when a state statute creates a protected "liberty interest" that the violation of state law raises federal constitutional concerns on federal habeas corpus. *See Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995).  A state law creates a "liberty interest" protected by the Due Process Clause if the law: (1) contains "substantive predicates" governing official decision making; (2) contains "explicitly mandatory language" specifying the outcome that must be reached if the substantive predicates are met; and (3) protects "some substantive end." *See id.* at 842.  The state law must provide more than merely procedure. *Ibid.*; *Dix v. County of Shasta*, 963 F.2d 1296, 1299 (9th Cir. 1992).

No protected liberty interest exists with respect to obtaining juror identification information. To begin, neither statute provides substantive predicates.  Instead, Section 237 requires a prima facie showing of good cause but does not define good cause or explain how good cause is shown other than to state that it is not established "where allegations of jury misconduct are speculative, vague, or conclusory." Cal. Code Civ. Proc. §237.  Furthermore, the state law does not contain explicitly

9

**United States District Court**
For the Northern District of California

1   mandatory language specifying the outcome that must be reached if the substantive predicates are

2   met.  Instead, the state rules provide a process in which a party "may" petition for an order unsealing

3   the records and providing the jurors' contact information for the purpose of preparing a motion for

4   new trial, and the trial judge has discretion to grant or deny the motion (*ibid.*).  Moreover, even if

5   petitioner would have had a liberty interest in obtaining juror contact information, it was not

6   arbitrarily taken away from him by the state in this case.  Instead, petitioner was unable to show

7   good cause in order to obtain a hearing on the matter (Exh. C5 at 19-20).  For these reasons, the trial

8   court did not violate petitioner's right to due process when it denied his request to hold a hearing on

9   disclosure of juror identities.

10          **3.      Due Process and Expert Gang Testimony**

11          Petitioner claims that the "trial court erred in admitting irrelevant and highly prejudicial

12   testimony by the State's gang expert" (Pet. 8).  The state appellate court rejected petitioner's claim

13   and explained that the testimony was "unquestionably relevant, at a minimum, to issues related to

14   the gang enhancement" (Exh. C5 at 22).

15          The United States Supreme Court has left open the question whether the Constitution is

16   violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier

17   of fact.  *See Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009).  Thus, while, under Ninth Circuit

18   precedent, it is "well established . . . that expert testimony concerning an ultimate issue is not per se

19   improper," *ibid.*, for purposes of habeas corpus review it suffices to determine that no Supreme

20   Court case has squarely addressed the issue and, therefore, a state appellate court's decision

21   affirming the admission of such testimony is not contrary to or an unreasonable application of

22   clearly established Supreme Court precedent under section 2254(d)(1).  *See id*. at 761-62.  Because

23   the admission of such testimony is not contrary to or an unreasonable application of clearly

24   established Supreme Court precedent, it cannot be grounds for habeas relief here.

25          Moreover, even if federal habeas relief were available on the grounds that the admission of

26   overly prejudicial evidence violates due process, the expert gang testimony presents no such

27   grounds.  Juries are presumed to follow a court's limiting instructions with respect to the purposes

28

**United States District Court**
For the Northern District of California

1   for which evidence is admitted. *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997). The trial

2   court gave the jury a limiting instruction that the expert gang evidence being introduced was for the

3   "purpose of showing criminal street gang activities and of criminal acts by gang members other that

4   [sic] the crimes for which the defendant is on trial" and "if believed, may not be considered . . . to

5   prove that the defendant is a person of bad character or that he has a disposition to commit crimes

6   (Exh. C5 at 21 n. 20). To the extent that any of the expert's testimony was not directly on point with

7   relating general gang information to the jury, the jury is presumed to have followed the trial court's

8   limiting instructions. Therefore, petitioner was not unduly prejudiced and the trial court did not

9   violate his right to due process when it admitted the expert gang testimony.

10                                        **CONCLUSION**

11          The state court's adjudication of these claims did not result in a decision that was contrary to,

12  or involved an unreasonable application of, clearly established federal law, nor did it result in a

13  decision that was based on an unreasonable determination of the facts in light of the evidence

14  presented in the state court proceeding. Accordingly, the petition is **DENIED**.

15          A certificate of appealability will not issue. Reasonable jurists would not "find the district

16  court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

17  473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

18          The Clerk shall enter judgment in favor of respondent, and close the file.

19          **IT IS SO ORDERED**.

20  Dated: August ___9___, 2010.

                                            WILLIAM ALSUP
21                                          UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28  G:\PRO-SE\WHA\HC.08\GUTIERREZ3286.RUL.wpd

                                            11